UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRISTEN COOK,<br><br>                       Plaintiff,<br><br>v.<br><br>ENTERGY NUCLEAR OPERATIONS, INC.,<br><br>                       Defendant. | CIVIL ACTION NO. 1:13-cv-10143-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S PARTIAL MOTION TO DISMISS</u>**

Pursuant to Fed. R. Civ. P. 12(b)(6), and by accompanying motion, Defendant Entergy Nuclear Operations, Inc. ("Entergy" or the "Company") seeks dismissal of Count I (Mass. Gen. Laws ch. 151B Gender Discrimination) and Count II (Mass. Gen. Laws 151B Disability Discrimination) of the Complaint filed by Plaintiff Kristin Cook ("Plaintiff" or "Ms. Cook").[1]

**I.     INTRODUCTION**

Entergy owns and operates the Pilgrim Nuclear Power Plant, where Plaintiff is currently employed. In her Complaint, dated October 16, 2012, Plaintiff brings three counts against Entergy based on her alleged treatment during her employment with Entergy from 2007 until the present. The essence of Plaintiff's Complaint alleges, among other things, that at some unidentified point during her employment:

---

[1] Defendant's partial motion to dismiss extends by ten (10) days after a ruling on this Partial Motion to Dismiss the deadline by which Defendant must file an answer responding to the Counts not subject to the instant motion. Fed. R. Civ. P. 12(a)(4); *Tingley Sys. Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95 (D. Mass. 2001).

> (1) unspecified coworkers subjected Plaintiff and her husband to a number of anonymous electronic condition reports ("CRs")[2] and mean-spirited pranks (Complaint at ¶¶ 12, 15);
>
> (2) Plaintiff was undercompensated as compared to male employees (Complaint at ¶¶ 16-17, 25); and
>
> (3) Entergy retaliated against Ms. Cook when she complained about this alleged treatment. Complaint at ¶ 8.

Count I of Plaintiff's Complaint alleges generally that she was subject to discrimination on the basis of her gender. Complaint at ¶ 32. Entergy seeks to dismiss Count I of Plaintiff's Complaint because (1) Plaintiff failed to exhaust her administrative remedies with the Massachusetts Commission Against Discrimination (the "MCAD") concerning alleged pay disparities in her current position with Entergy (Complaint at ¶ 25), as well as any purportedly gender-based discriminatory and/or harassing conduct that occurred after Plaintiff filed her MCAD Charge; (2) Plaintiff's gender-based allegations of hostile work environment are barred by the statute of limitations; and (3) any timely allegations are neither severe nor pervasive to establish a claim of gender-based hostile work environment as a matter of law.

Count II of Plaintiff's Complaint alleges that Plaintiff was subject to discrimination on the basis of her alleged disability. Complaint at ¶ 34. Entergy seeks to dismiss Count II of Plaintiff's Complaint because (1) Plaintiff failed to exhaust her administrative remedies as to her allegations that Entergy did not accommodate her disability (Complaint at ¶¶ 23-24), as well as any purportedly disability-based discriminatory and/or harassing conduct that occurred after Plaintiff filed her MCAD Charge; (2) Plaintiff does not (and cannot) allege that she is a qualified handicapped person for the purposes of her disability discrimination claim; (3) Plaintiff's disability-based allegations of hostile work environment are barred by the statute of limitations;

---

[2] A CR is one of several ways employees at Entergy can report safety and other concerns. Complaint at ¶ 11.

and (4) any timely allegations are neither severe nor pervasive to establish a claim of disability-based hostile work environment as a matter of law.

Accordingly, for these reasons and as set forth more fully below, the Court should dismiss Count I and Count II of Plaintiff's Complaint.

## II.     STATEMENT OF ALLEGATIONS[3]

### a. *Administrative Proceedings Before the Massachusetts Commission Against Discrimination*

On or about September 22, 2011, Plaintiff filed a Charge with the MCAD alleging unlawful discrimination and retaliation on the basis of her gender and disability in violation of Mass. Gen. Laws ch. 151B, 42 U.S.C., § 2000e, and the Americans With Disabilities Act.  *See* MCAD Charge, attached hereto as Exhibit A.   Specifically, Plaintiff alleged that she had "been subjected to a harassing environment (due to [her] disability and [her] gender), and retaliation for complaining of discrimination" from "October 2007 and continuing until at least **May 2011**." Exh. A (emphasis added).

On January 2, 2012, Entergy filed a position statement with the MCAD denying Plaintiff's allegations.  *See* Respondent's Position Statement, attached hereto as Exhibit B. Plaintiff filed a Supplemental Statement with the MCAD on June 1, 2012.  *See* Complainant's Supplemental Statement, attached hereto as Exhibit C.  However, nowhere in her Supplemental Statement did Plaintiff allege any acts of discrimination that occurred on or after September 22, 2011, *i.e.*, the date she filed her Charge with the MCAD, or even on or after May 2011, *i.e.*, the

---

[3] In an effort to provide the Court with the factual background for the Rule 12(b)(6) Motion, certain allegations made in the Complaint are recited here and below.  For purposes of this Motion only, Entergy assumes the truth of those allegations.  *See, e.g., Garita Hotel, Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 985 F.2d 15, 17 (1st Cir. 1992). The recitation of these allegations here should not, however, be understood as an acceptance of their veracity for any other purpose.

date alleged in her initial Charge as the most recent date of any perceived discriminatory conduct. *Id.*

On July 25, 2012, Ms. Cook obtained written permission from the MCAD to file a civil action. *See* MCAD Notice of Right To Private Action, attached hereto as Exhibit D. The MCAD accordingly terminated its investigation of Plaintiff's Charge. *Id.* Plaintiff filed a civil action with the Massachusetts Superior Court, Plymouth County, on October 16, 2012.

In her Complaint, Plaintiff alleges that she has "been subject to a harassing environment (due to her disability and gender), and retaliation for complaining about discrimination" from "October 2007 and continuing at least until **August 2012** []." Complaint at ¶ 8 (emphasis added). In so doing, Plaintiff expanded the scope of her Complaint beyond the scope of her MCAD Charge by fifteen (15) months, from May 2011 to August 2012. *Id.*; Exh. A.

Unlike Plaintiff's MCAD Charge, her Complaint alleges that Entergy denied and/or rescinded an accommodation to Plaintiff for her alleged disability. Complaint at ¶¶ 23-24. Plaintiff also raises **for the first time** in her Complaint a number of purportedly discriminatory incidents that occurred **after** May 2011 (the most recent date of alleged discrimination in the Charge); September 22, 2011 (the date Plaintiff filed the MCAD Charge); and/or July 25, 2012 (the date Plaintiff received a right to sue notice from the MCAD). Complaint at ¶¶ 8-9, 17-18, 22, 23-25. For example, Plaintiff's Complaint includes the following allegations that are **noticeably absent** from her MCAD Charge:

- Currently, Ms. Cook "is out of work on medical leave, and receiving short term disability benefits, due to the extreme deterioration of her physical condition, which is due primarily to the hostile work environment she has been subjected to since her placement in her most recent position in the Administrative Services Department []." Complaint at ¶ 9.

- "[B]y the beginning of September [2012], Ms. Cook's condition had deteriorated from the stress the harassment and discrimination caused her, to the point that she

4

- had to take a medical leave from her job, and received short term disability pay." Complaint at ¶ 18.

- In 2012, "Ms. Cook has been hospitalized due to the worsening of her physical condition, and is not sure when she will be able to return to work." Complaint at ¶ 18.

- Also in 2012, "Ms. Cook has been out of work earlier in the year due to complications from her Multiple Sclerosis." Complaint at ¶ 18.

- At some point in 2011 or 2012, "Ms. and Mr. Cook were also retaliated against by being denied the ability to attend a Diversity and Inclusion Summit." Complaint at ¶ 22.

- After her return to work on July 2, 2012, Ms. Cook was required to fill out a form "due to her request for continued company accommodations []." Complaint at ¶ 23. According to Ms. Cook, Entergy had previously "accommodated Mrs. Cook with paid leave time to work from home when feeling the effects of her Multiple Sclerosis." *Id.*

- Entergy "has rescinded their past accommodation granted to Ms. Cook." Complaint at ¶ 24.

- "In Ms. Cook's **new** position as Superintendant of Administrative Services, she remained under paid [sic] compared to her male Superintendant counterparts []." Complaint ¶ 25 (emphasis added).

Not one of these allegations were included (or even alluded to) in Plaintiff's MCAD Charge. Exh. A.

### b. *Plaintiff's Hostile Work Environment Claims*

In support of her hostile work environment claims, the Complaint alleges that Plaintiff was the target of a number of mean-spirited Condition Reports ("CRs") and pranks, all of which occurred on or after Plaintiff "accepted the position of Employee Concerns Coordinator" in **September 2007**. Complaint at ¶ 11. Yet, Plaintiff attributes specific dates (or even timeframes) to only three of these events. In particular:

- On May 16, 2011, an anonymous person posted a condition report that concerned Ms. Cook and made a "vulgar anatomical reference[]." Complaint at ¶ 13, no. 4.

- On December 16, 2010, an anonymous person posted a condition report that contained "[a] false statement that Stephen Cook had illegally entered a company building." Complaint at ¶ 13, no. 10.

- In or around November 2010, an anonymous person made an unspecified sexually harassing comment to Ms. Cook. Complaint at 15, no. 3.

Notably, only two of the three time-anchored events concern Plaintiff. Complaint at ¶¶ 13, 15. In her Complaint, Plaintiff does not attribute any specific time or timeframe to the remainder of the vague and conclusory allegations regarding either the CRs or pranks. *Id.*

### III. STANDARD OF REVIEW

To survive a motion to dismiss, Plaintiff must articulate enough facts to state a claim of relief that is plausible on its face. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions …. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.") (quotations and citations omitted). If Cook has not moved her claims against Entergy across the line from conceivable to plausible, then the Complaint should be dismissed.

Two underlying principles must guide the Court's assessment as to the adequacy of the pleadings to support a claim of relief against Entergy. *Moldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Such conclusory statements are not entitled to the assumption of truth." *Id.* (quoting *Ashcroft v. Iqbal* 556 U.S. 662, 663-664 (2009)) (internal citations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quotations omitted). "This second

6

principle recognizes that the court's assessment of the pleadings is context-specific, requiring the reviewing court to draw on its own judicial experience and common sense. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but not shown – that the pleader is entitled to relief." *Id.* (citations and quotations omitted). *See also*, *Tomaselli v. Beaulieu*, No. 08-cv-10666-PBS, 2010 WL 2105347 at *3-4 (D. Mass. May 7, 2010) (slip. op.) (setting forth the standard of review under Rule 12(b)(6)).

For a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "ordinarily, a court may not consider any documents that are outside of the complaint or not expressly incorporated therein, unless the motion [to dismiss] is converted into one for summary judgment." *Brown v. Sodexo, Inc.*, No. 10-11995-JLT, 2011 WL 2729205, *1 (D. Mass, July 5, 2011); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). There are, however, exceptions, including "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Brown*, 2011 WL 2729205 at *1; *Alt. Energy, Inc.*, 267 F.3d at 33. Here, Plaintiff refers in her Complaint to the Charge she filed with the MCAD. Complaint at ¶ 4. In addition, Entergy's Position Statement (Exh. B) and Plaintiff's Supplemental Statement (Exh. C), both filed with the MCAD, are public records in a related action and may therefore be considered by this Court for purposes of the instant motion. *See, e.g.*, *Reliance Ins. Co. v. City of Boston*, 71 Mass. App. Ct. 550, 555 (2008).

Moreover dismissal is appropriate, where, as here, a defective complaint cannot be cured by amendment. *Cf. Hatch v. Dept. for Children, Youth, & Their Families*, 274 F.3d 12, 25 (1st Cir. 2001) (motion for leave to amend appropriately denied where proposed amendment was

futile, *i.e.* amendment would add claims that could not withstand a motion to dismiss); *MacNeill Eng'g Co., Inc. v. Tisport, Ltd*, 59 F. Supp. 2d 199, 203 (D. Mass. 1999) (same); *Fornoro v. Gannon*, 124 Fed. Appx 8, 12, 2004 WL 2731491 (1st Cir., Dec. 1, 2004); *Okoye v. Bank of New York Mellon*, No. 10-11563-DPW, 2011 WL 326986, at * 13 (D. Mass., July 28, 2011).

## IV.   LEGAL ARGUMENT

### a. *Plaintiff Failed to Exhaust Her Administrative Remedies*

It is well-established that a plaintiff seeking to bring claims of discrimination under Mass. Gen. Laws ch. 151B must first exhaust her administrative remedies by presenting those claims to the MCAD. *See Everett v. The 357 Corp.*, 453 Mass. 585, 600.  The dual purpose of this requirement is: "(1) to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination and (2) to provide notice to the defendant of potential liability." *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001).  When a plaintiff fails to present her claims before the MCAD, the civil court lacks subject matter jurisdiction to consider those claims.  *Everett*, 453 Mass. at 600.

Plaintiff's charge of discrimination with the MCAD establishes the scope of claims and factual allegations that are permissible in any later civil action.  *Id.* at 602.  Indeed, "the purposes of G.L. c. 151B would be frustrated if the claimant were permitted to allege one thing in the MCAD complaint only to allege something entirely different in the ensuing civil action." *Id.* (internal citations and quotations omitted).  Plaintiff's claims in her civil action must be claims that the MCAD could have been reasonably expected to uncover based on the allegations in the administrative charge.  *Id.* at 602-603.  This rule, know as the "scope of the investigation" rule "is not a 'fishing expedition' that should be expected to extend to matters unrelated to the charge." *Fallon v. Fed'l Express Corp.*, No 2000-00367, 2002 WL 31677216, at *8 (Mass.

Super. Ct., Oct. 11, 2002) (quoting *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 465 (1st Cir. 1996)). "The [scope of the investigation] rule does not … provide a plaintiff with an unlimited license to extend his claim endlessly beyond the bounds and parameters encompassed by the administrative charge." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 32 (1st Cir. 2009). "Indeed, such an extension of the scope of the investigation rule would effectively nullify the administrative exhaustion requirement and convert it into a simple notice requirement that some claim may be brought, thereby depriving employers of the opportunity to resolve issues at an early stage and rendering the EEOC (and state-level equivalents) superfluous." *Thornton*, 587 F.3d at 32.

Therefore, courts regularly dismiss claims and allegations that differ from those that were presented in the MCAD charge. This is the case when the plaintiff attempts to plead claims in court that are distinct, either factually or legally, from those she presented at the MCAD. *See, e.g., Everett*, 453 Mass. at 606-07. Where, as here, Plaintiff has alleged (1) a failure to accommodate for the first time in her Complaint and (2) numerous instances of discrimination and/or harassment that occurred **after** the MCAD could have conducted any investigation into this matter, Plaintiff's allegations could not have been uncovered by the MCAD and must be dismissed. *Thornton* at 31.

      1.    <u>Plaintiff's reasonable accommodations claim must be dismissed.</u>

To the extent Plaintiff's disability discrimination claim (Count I) includes a claim for failure to accommodate, that claim must be dismissed as a matter of law. *See Furtado v. Standard Parking Corp.*, 820 F. Supp. 2d 261, 275-276 (D. Mass. 2011). In *Furtado*, the Court dismissed a plaintiff's reasonable accommodation claim because the facts the plaintiff alleged in his administrative charge were limited to disparate treatment disability discrimination. *Furtado*,

820 F. Supp. 2d at 275-276.  Reasoning that the MCAD could not have uncovered evidence related to accommodations in its investigation, the Court noted, "Furtado's termination-focused disability discrimination claim and his reasonable accommodation claim are based upon sets of facts that are distinct both substantively and temporally." *Id.* at 275.  Even though the plaintiff alleged general disability discrimination in his administrative charge, the Court concluded that, "[g]iven the purposes of the administrative filing requirement and the parameters of the 'scope of the investigation' rule [plaintiff's] reasonable accommodation claim under the ADA and Massachusetts General Laws chapter 151B is not reasonably within the scope of the MCAD investigation into his administrative charge." *Id.*

Similarly, Plaintiff failed to allege any failure to accommodate in her MCAD Charge. Thus, the allegations her Complaint that Entergy previously "accommodated Ms. Cook with paid leave time to work from home" (Complaint at ¶ 23) and "has rescinded their past accommodation granted to Ms. Cook" (Complaint at ¶ 24) were not properly exhausted before the MCAD.  As in *Furtado*, the MCAD in the instant case was not afforded an opportunity to investigate any of Ms. Cook's allegations related to accommodations, nor was Entergy provided any notice of potential liability as to this claim.  Moreover, the accommodations-related allegations are not reasonably related to the allegations in Plaintiff's Charge, and are based on events that occurred in July 2012, **after** the MCAD could have conducted its administrative investigation.  Complaint at ¶ 23.  Accordingly, Plaintiff's claim that Entergy failed to provide and/or rescinded an accommodation must be dismissed.

    2.    <u>Plaintiffs' allegations occurring on or after September 22, 2011 must be dismissed.</u>

In addition, Plaintiff's post-Charge allegations related to Count I (gender-based discrimination) and Count II (disability-based discrimination) must also be dismissed because

10

Plaintiff failed to exhaust those claims in her administrative Charge.  *See Thornton*, 587 F.3d at 31.  In *Thornton*, the First Circuit held that the "scope of the investigation" rule did not bring the plaintiff's alleged acts of discrimination post-dating his administrative charge within the scope of that charge.  *Id.* at 31-32.  The court noted that a reasonable investigation by the MCAD would not have uncovered the "events, actions, and medical restrictions that [plaintiff] cites in his district court complaint" that occurred subsequent to filing his administrative charge.  *Id.* at 32.

Plaintiff, too, cannot now allege events and actions in her Complaint that post-date her September 22, 2011 Charge.  For example, the MCAD would have had absolutely no occasion to investigate her pay in her "new position as Superintendant of Administrative Services" (Complaint at ¶ 25) because Plaintiff did not hold that position until well after she filed her Charge.  Indeed, Plaintiff's Supplemental Statement to the MCAD, filed on June 1, 2012, made no mention of any change in position or ongoing alleged under-compensation.  Exh. C.  Similarly, Plaintiff's allegations related to medical leave and hospitalization (and the alleged causes) are wholly unrelated to and were not included Plaintiff's Charge or Supplemental Statement and could not, therefore, have been uncovered by the MCAD as part of a reasonable investigation into her allegations.  In particular, Plaintiff's allegation that she "had to take medical leave from her job" and was thereafter hospitalized due to "the stress of harassment and discrimination" in September 2012 (Complaint at ¶ 18) was not anticipated in the Charge or any subsequent investigation, because the factual basis of these allegations occurred well **after** Ms. Cook sought and received a right to sue notification from the MCAD in July 2012.  Consequently, because a reasonable investigation of Ms. Cook's claims would not have uncovered these subsequent allegations, and because Ms. Cook did not amend her Charge to include them, they must be dismissed for failure to exhaust.

### b. *Plaintiff's Claim of Disability Discrimination Is Insufficient as a Matter of Law.*

Count II of Plaintiff's Complaint, alleging violations of Mass. Gen. Laws ch. 151B on the basis of Plaintiff's alleged disability, is devoid of any factual detail required to state a "plausible" claim for relief under Fed. R. Civ. P. 8(a)(2) and as set forth in Supreme Court decisions, *Ashcroft v. Iqbal*, 556 U.S. at 678 and *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. Critically, Plaintiff's disability discrimination claim must be dismissed because she has failed to allege any facts that could plausibly support the reasonable inference that she is a "qualified handicapped person" for purposes of the antidiscrimination statute. A "qualified handicapped person" is a person with a handicap who can perform the essential functions of her job with or without reasonable accommodation. *See* M.G.L. ch. 151B, § 4(16); *see also Ward v. Massachusetts Health Research Inst.*, 209 F.3d 29, 33 (1st Cir. 2000); MCAD Guidelines: Employment Discrimination on the Basis of Handicap (hereafter the "Guidelines"). The Guidelines provide that "[t]he 'essential functions of the job are those functions which must necessarily be performed by an employee in order to accomplish the principal objectives of the job."

Although Plaintiff states in a conclusory fashion that she "was and is a qualified handicapped person" (Complaint at ¶ 9) she provides no facts to support and in fact completely contradicts this assertion in her Complaint. Specifically, Plaintiff alleges that "[a]t this point in time, Ms. Cook is out of work on medical leave" (Complaint at ¶ 9) and that she "has been hospitalized due to the worsening of her physical condition, and is not sure when she will be able to return to work." Complaint at ¶ 18. Indeed, the only accommodation she alleges – "being allowed paid leave time for Multiple Sclerosis related flare ups" (Complaint at ¶ 23) – is silent as to Plaintiff's ability to perform the essential functions of her job. Given Plaintiff's apparent inability to return to work with or without any "accommodation" other than "paid time off," she

cannot as a matter of law claim to be a qualified handicapped person. *See Beal v. Board of Selectman of Hingham*, 419 Mass. 535, 539-543 (1995) (plaintiff's declaration of total disability on being asked to return to work was proof that she could not have performed essential functions of the position and, therefore, she was not a qualified handicapped person); *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 581-583 (1st Cir. 1992) (plaintiff's declaration that he was "totally disabled" was admission that he had been unable to perform the essential functions of the job, even given reasonable accommodation). As such, Plaintiff has failed to establish an essential element of her disability discrimination claim, and Count II of her Complaint must be dismissed.

   c. **Plaintiff's Hostile Work Environment Claims (Count I and Count II) Fail as a Matter of Law**

      1.   Plaintiff's hostile work environment claims are barred by the statute of limitations.

In addition to failing to exhaust her administrative remedies, Plaintiff's gender-based hostile work environment claim (Count I) and disability-based hostile work environment claim (Count II) must also be dismissed because she failed to file her Charge of Discrimination with the MCAD within the 300-day statute of limitations imposed by Mass. Gen. Laws ch. 151B, § 5. It is well-established that "[a]n employee asserting violations of Chapter 151B must file a charge of discrimination with the MCAD within 300 days after the alleged act of discrimination." *D'Arezzo v. United Stationers*, No 09-cv-10019-DPW, 2010 WL 2573201, at *5 (D. Mass. 2010, June 23, 2010) (internal citation and quotation marks omitted); *see also Weber v. Community Teamwork, Inc.*, 434 Mass. 761, 785-786 (2001) (affirming judgment where plaintiff knew of allegedly discriminatory conduct but failed to bring a claim within the limitations period). The MCAD's regulations clearly establish that a charge alleging discrimination must be filed "at any time within 300 days after the alleged unlawful conduct." 804 C.M.R. 1.10(2). "By the plain

language of the statute, the limitations period begins to run at the time of the 'act of discrimination.'" *Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination*, 441 Mass. 632, 641 (2004).  Moreover, an absence of any reference to a timeframe fails to meet the requirement of the statute of limitations because it is too imprecise to place the alleged conduct within the 300-day period.  *See D'Arezzo v. United Stationers*, 2011 WL 2573201 at *5 (plaintiff did not specify in his complaint whether alleged conduct occurring subsequent to the triggering, time-barred event was within the limitations period and his allegations were therefore barred by the statute of limitations); *see also Galla v. Louis, Inc.*, No. 00-BEM-3747, 2006 WL 1835931, at *7 (MCAD June 12, 2006) (refusing to invoke the continuing violation doctrine because of plaintiff's generalized references to time, such as "in the late spring or summer of 2000," and "toward the end of his employment.").  Because Plaintiff filed her Charge with the MCAD on September 11, 2011, the 300-day statute of limitations precluded Plaintiff from bringing a charge (and subsequently a civil action) based on discriminatory acts occurring on or before November 1, 2010.

At the crux of Plaintiff's gender- and disability-based hostile work environment claims are her allegations that anonymous coworkers subjected Plaintiff and her husband to mean-spirited condition reports ("CRs") and pranks occurring on or after Plaintiff became the Employee Concerns Coordinator in September 2007.  Complaint at ¶¶ 11, 13, 15.  However, only three of these events are alleged to have occurred after November 1, 2010, and only two of those events involve conduct targeted toward Plaintiff: (1) a May 16, 2011 CR referencing Plaintiff's "anatom[y]" (Complaint at ¶ 13, no. 4), and (2) without further detail, a "sexually harassing comment[]" made by an unidentified coworker to Ms. Cook in November 2010

(Complaint at ¶ 15, no. 3).[4] The remainder of Plaintiff's CR- and prank- related allegations are not alleged to have occurred within the statutory period (or indeed during any specific timeframe), and must therefore be dismissed as untimely.

    2.    <u>Plaintiff has plead insufficient facts to support application of the continuing violation theory.</u>

In order for Plaintiff to surmount the statute of limitations obstacle, she must somehow resuscitate claims related to conduct prior to November 1, 2010. The law will do so only if the facts warrant finding a continuing violation. *See Cuddyer*, 434 Mass. at 531. The facts here do not. To establish a continuing violation under *Cuddyer*, Plaintiff must make some showing that she reasonably did not realize her need to file her claim within the statutory period. Put another way, the untimely conduct will be barred if "the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve and, thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct." *See Cuddyer*, 434 Mass. at 539.

As alleged, the continuing violation doctrine cannot salvage Plaintiff's facially deficient complaint. Plaintiff alleges no facts that could conceivably support the inference that she was unaware of her obligation to assert her legal rights in advance of the statutory deadline. In fact, the Complaint actually establishes that Plaintiff believed that her work situation was pervasively hostile and unlikely to improve as early as July 29, 2010, if not sooner. Complaint at ¶ 20. *See Cuddyer* at 535; *see also Martin-Kirkland v. United Parcel Service, Inc., et al.*, 71 Mass. App. Ct. 1123 *1, *2 (2008); *Richards Fernald State School, et al.*, No. 961357, 2000 WL 1473024, at *2 (Mass. Super., July 31, 2000). In her Complaint, Plaintiff alleges that Mr. Cook e-mailed the

---

[4] Plaintiff also alleges that an anonymous CR was posted on December 16, 2010, stating that Mr. Cook "illegally entered a company building []." Complaint at ¶ 13, no. 10. However, this allegation is about conduct directed solely toward Plaintiff's husband, not Plaintiff.

Site Management team on July 29, 2010, "asking when the harassment would stop[]." *Id.* Clearly, Plaintiff and her husband considered the treatment to which they were allegedly subject to be "harassment" in July 2010, at least three months prior to the November 1, 2010 statutory deadline for filing a charge with the MCAD. As a consequence, the continuing violation doctrine is inapplicable to the facts as alleged, and Plaintiff's hostile work environment claims must be dismissed as a matter of law.

    3.    <u>Plaintiff's non-time barred allegations of hostile work environment are neither severe nor pervasive</u>.

To the extent that Plaintiff attempts to anchor her Complaint with timely claims, these allegations are insufficiently severe or pervasive to establish an actionable claim. *See* Mass Gen. Laws ch. 151B. To determine whether alleged conduct satisfies the "sufficiently severe and pervasive" standard, the court must determine whether, in the totality of the circumstances, the alleged conduct would interfere with a hypothetical reasonable individual's work performance and seriously affect the psychological well-being of a reasonable person. *See Core-Boykin v. Boston Edison Co.*, No. 01-5156-E, 2004 WL 855567 at *6 (Mass. Super., April 13, 2004) (display for several weeks of clay object resembling a penis, although offensive, was insufficient to meet the threshold); *Lewis v. The Gillette Co.*, No. 90-12257-WF, 1993 WL 291771, at *7 (D. Mass., July 21, 1993) (finding that gawking and staring do not constitute sufficiently severe and pervasive harassment for a hostile work environment claim);

Plaintiff's timely allegations consist of only three vague and generalized claims, one of which has nothing to do with Plaintiff. As previously noted, Plaintiff alleges that an anonymous coworker posted a CR on May 16, 2011 that included "[v]ulgar anatomical references regarding Ms. Cook" (Complaint at ¶ 13, no. 4). Plaintiff further alleges in a conclusory fashion that an undisclosed person or persons would make "sexually harassing comments" to her when she

16

"would walk through the plant []." *Id.* at ¶ 15, no. 3. Finally, Plaintiff claims that on December 16, 2010, an undisclosed person alleged, via a CR, "that Steven Cook had illegally entered a company building." *Id.* at ¶ 13, no. 10.

None of these comments (as alleged by Plaintiff) are sufficient to establish a hostile work environment because they fall well short of the severe or pervasive standard. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (simple teasing, offhand comments, and isolated incidents, unless extremely serious, do not create a hostile work environment; *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 83-84 (1st Cir. 2006) (isolated incidents generally do not amount to hostile work environment, especially with absence of unwanted physical contact); *Montlouis v. Pirus Networks, Inc.*, No.025364, 2005 WL 1009523, at *6 (Mass Super., Mar. 15, 2005) (finding racial jokes and collective laughter around racist remarks insufficiently severe and pervasive). *Daigle v. NEXC, Inc.*, No. 991555D, 2001 WL 1199868, at *4 (Mass. Super., Feb. 23, 2001) (where supervisor referred to women as "beavers" and accused plaintiff of being "too emotional," plaintiff failed to allege sufficient facts to establish a case for sexual harassment for purposes of employer's motion to dismiss).

Under the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. at 678 and *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, Courts now properly require complaints to allege a plausible claim. This standard allows courts room to dismiss cases where there is no conceivable factual basis for legal relief. *See Bennefield v. Kohl's Dept. Stores, Inc.*, No. 11-00647, 2012 WL 1560407, at * 4 (Mass. Super., Feb. 17, 2012) (motion to dismiss granted where employee's claim that he was interviewed in connection with company theft and subject to one incident of offensive race-based graffiti was neither severe nor pervasive). This is one of those cases – the timely conduct alleged by Plaintiff was not, by any stretch of the imagination, severe or

pervasive. For this reason, the Court should dismiss her hostile work environment claims (Counts I and II) against Entergy.

## V.     CONCLUSION

For the reasons set forth above, Defendant Entergy Nuclear Operations, Inc., respectfully requests that this Court grant its motion and dismiss Count I and Count II of the Complaint with prejudice, together with costs and such other and further relief as this Court deems appropriate. Defendant submits that leave to amend should not be granted in this matter because it would not cure the fatal defects in Plaintiff's Complaint.

Respectfully submitted,

ENTERGY NUCLEAR OPERATIONS, INC.,

By its Attorneys,

/s/ Julia M. Brumer
Michael Clarkson, MA Bar No. 646680
Julia M. Brumer, MA Bar No. 676722
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place, Suite 3220
Boston, MA 02108
Telephone: 617.994.5700
Facsimile: 617.994.5701
michael.clarkson@ogletreedeakins.com
julia.brumer@ogletreedeakins.com

Dated: January 31, 2013

**CERTIFICATE OF SERVICE**

  I hereby certify that, on January 31, 2013, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

            <u>/s/ Julia M. Brumer</u>
            Julia M. Brumer

14148651.1 (OGLETREE)