### United States District Court
### District of Massachusetts

```
_____
                               )
KRISTEN COOK,                  )
        Plaintiff,             )
                               )
        v.                     )    Civil Case No.
                               )    13-10143-NMG
ENTERGY NUCLEAR OPERATIONS, INC., )
        Defendant.             )
_____)
```

### MEMORANDUM & ORDER

**GORTON, J.**

Plaintiff Kristen Cook ("Cook" or "plaintiff") alleges that her employer, defendant Entergy Nuclear Operations, Inc. ("ENOI" or "defendant"), discriminated against her on the basis of disability and gender.

## I.   Background

Cook is employed at the Pilgrim Nuclear Power Plant ("the Plant") in Plymouth, Massachusetts, which is owned by ENOI. Defendant is a Delaware corporation with a principle place of business in Jackson, Mississippi.

Plaintiff began her employment at the Plant in 2002. She alleges that the discrimination began in 2007, around the time of her promotion to the position of Employee Concerns Coordinator. As Employee Concerns Coordinator one of her job responsibilities was responding to Conditions Reports ("Reports"), which are

-1-

electronic submissions from employees at the Plant regarding problems or issues in the work place.  Twenty-five percent of the Reports were submitted anonymously and Cook alleges that 10% of those were "inappropriate".  Plaintiff alleges that a substantial number of the inappropriate Reports were about her or her husband, Steven Cook, also an employee of defendant.  The Reports were not screened and were therefore available to be viewed by any employee of the Plant for a period of up to several days, even if invalid or inappropriate.  Cook alleges that in addition to false accusations against her and her husband, the Reports contained vulgar references to her anatomy and various other negative statements.  She also alleges that she was subjected to prank phone calls, sexually harassing comments and the posting of several personal documents around the Plant, intended to humiliate her.

On July 29, 2010, Stephen Cook sent an email to the Site Management Team requesting that they take steps to stop the harassment but he received no response.  In early 2011, plaintiff filed an internal ethics complaint.  In March 2011, an attorney for plaintiff wrote a letter to ENOI's parent company to complain about plaintiff's work environment.  Following the two 2011 complaints, plaintiff alleges that steps were taken to repair the Condition Reporting system but that those steps were an inadequate response to her complaints.

In 2011 Plaintiff was promoted to "ECI Manager."  She alleges that she was the lowest paid individual in that position and had previously been one of the lowest paid Employee Concern Coordinators, despite meeting all qualifications for both jobs. While an ECI Manager, Cook alleges that she was paid only slightly more than her male direct report.  After she filed her Complaint with the Massachusetts Commission Against Discrimination ("MCAD") in September 2011, defendant raised Cook's salary without informing her or providing a reason.  Cook has since obtained a new position with defendant as Superintendent of Administrative Services.

Plaintiff was diagnosed with Multiple Sclerosis ("MS") in 2002.  In the past, she was successfully able to manage her illness because she was allowed to work from home when she experienced MS condition flair ups.  In 2011, however, her condition began to deteriorate rapidly.  She points to her work environment as a cause of that deterioration.  After returning to work from an extended leave in July, 2012, plaintiff was required rapidly to fill out a Job Analysis/Essential Function form, which she reports is generally completed over several months.  She also alleges that her past accommodations, namely short term leave during MS condition flair ups, have been rescinded.  Cook has been out of work on medical leave since September 2012.

Plaintiff filed an MCAD charge on September 22, 2011.  On

-3-

July 6, 2012 she informed the MCAD that she wished to exercise her private right of action in court.  The MCAD subsequently dismissed the matter without prejudice on July 23, 2012.

In her Complaint plaintiff asserts three claims: 1) Discrimination on the Basis of Gender, in violation of M.G.L. ch. 151B (Count I), Discrimination on the Basis of Disability, in violation of M.G.L. ch. 151B (Count II), and Retaliation in violation of M.G.L. Ch. 151B (Count III).  Defendant has moved to dismiss Counts I and II for failure to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The Court heard oral argument on the motion at a scheduling conference on April 4, 2013, and took the matter under advisement.

## II.  Analysis

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez

-4-

v. <u>Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).  A court may
not disregard properly pled factual allegations even if actual
proof of those facts is improbable. Id.  Rather, the relevant
inquiry focuses on the reasonableness of the inference of
liability that the plaintiff is asking the court to draw. Id. at
13.  When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents incorporated
by reference therein and facts susceptible to judicial notice.
<u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011).

### B.  Count I: Discrimination on The Basis of Gender, in Violation of M.G.L. C. 151B

As an initial matter, plaintiff's Complaint fails to
indicate the specific theories of gender discrimination on which
she intends to rely.  Count I of the Complaint simply states that
"[d]efendant has engaged in discrimination against Ms. Cook on
the basis of gender."  Despite this lack of specificity,
defendant has sought dismissal of Count I on the ground that the
conduct alleged is insufficient to constitute a hostile work
environment claim.  Plaintiff has replied, in part, to those
arguments but seems to emphasize a claim for wage discrimination.
"[W]hen both harassment and 'job status' discrimination claims
are made, they are analyzed separately." <u>Lattimore</u> v. <u>Polaroid
Corp.</u>, 99 F.3d 456, 463 (1st Cir. 1996).  Therefore, the Court
will address both forms of gender discrimination.

###### 1.   Gender Discrimination Due to a Hostile Work Environment

A plaintiff seeking to recover for exposure to a hostile work environment must show that the "conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance." Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411 (2001).  Such a claim must be filed within 300 days after the alleged act of discrimination. Mass. Gen. Laws ch. 151B, § 5.  Plaintiff filed her Complaint on September 22, 2011, and thus the 300-day period extends back to November 26, 2010.

Defendant argues that there are only three incidents that occurred within the 300-day statute of limitations period: 1) a Conditions Report referencing plaintiff's anatomy, 2) a Conditions Report falsely alleging that Cook's husband had entered the building illegally, and 3) an unspecified, sexually harassing comment.  It appears that only the first and third incidents are relevant to this claim because the complaint about Cook's husband entering the building cannot be said to relate to plaintiff's gender.  Defendant argues that those two incidents do not, as a matter of law, create a hostile work environment.

As plaintiff correctly notes, however, under College-Town v. MCAD, 400 Mass. 156 (1987), ENOI's failure to take adequate steps in response to Cook's March 2011 complaint can itself be considered an act of discrimination.  See also Cuddyer, 434 Mass. at 541 ("defendant's failure to discipline anyone for the acts,

or effectively to remedy them, may be considered part of the
environment in which the plaintiff worked."); Thomas O'Connor
Constructors, Inc. v. MCAD, 72 Mass. App. Ct. 549, 561, (2008)
(epithets and failure "to take appropriate remedial action
creates a ... hostile work environment that is sufficiently
severe and pervasive as to permit recovery."); College-Town, 434
Mass. at 167 (upholding a MCAD finding that "an employer who is
notified of sexual harassment in the workplace and fails to take
adequate remedial action violates G.L. c. 151B, § 4."). Given
that the alleged failure to act occurred during the 300-day
period, the Court may also consider it an "anchoring" event.

Furthermore, a plaintiff may bring claims based upon conduct
that occurred prior to the 300-day period if the otherwise
untimely incidents are considered part of a continuing violation.
The continuing violation theory, "rewinds the clock for each
discriminatory episode" unless the plaintiff

> knew or reasonably should have known that her work
> situation was pervasively hostile and unlikely to
> improve, and, thus, a reasonable person in her position
> would have filed a complaint with the MCAD before the
> statute ran on that conduct.

Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531-39
(2001). In order to "anchor the earlier claims," plaintiff needs
to show that "there is a discrete violation within the [300 day]
limitations period." Id. at 532.

Even if the condition report, the sexually-harassing comment

-7-

or defendant's failure to respond adequately to plaintiff's internal complaint are not together sufficient to constitute a hostile work environment, the Court finds that those events are adequate anchors for the continuing violation theory to apply.

Defendant argues that the continuing violation theory does not apply because plaintiff and her husband reached out to the Site Management team in July 2010, requesting that the harassment stop.  Defendant asserts that such a request is evidence of plaintiff's belief that the behavior alleged in the complaint constituted harassment and that it was unlikely to improve.  The Court is of the view, however, that the fact that Cook filed an additional internal complaint in March, 2011 is actually evidence that she reasonably believed that her work environment could improve through the internal complaint structure.  Believing that the internal complaint process could resolve her concerns,

> plaintiff is entitled and . . . should be encouraged to
> wait a reasonable time for the employer to respond by
> investigating and remedying the situation before
> ratcheting up the dispute by filing an MCAD complaint.

Manno v. BJ's Wholesale Club, 150 F. Supp. 2d 325, 333 (D. Mass. 2001).  There is no evidence that plaintiff was tardy in seeking a remedy through the MCAD.  Instead, it is clear that prior to November 26, 2011, ENOI had reasonable notice of the alleged conduct.

By applying the continuing violation theory, the Court may

-8-

consider, in addition to the anchoring events, plaintiff's allegations of numerous incidents that occurred prior to November, 2010, including: 1) pervasive inappropriate Condition Reports, 2) in person "sexually harassing comments" and 3) the series of harassing phone calls where only "kissing noises" were made.  Taking those allegations as true, as the Court is obligated to do when considering a motion to dismiss, the Court finds that plaintiff has stated sufficient facts to support a claim for relief under the hostile work environment theory.

### 2. Wage Discrimination

In response to defendant's Motion to Dismiss, plaintiff also asserts that she was paid less than her peers.  Thus the Court presumes that, while not separately pled in the Complaint, plaintiff intends to allege gender discrimination based on salary disparity.  Chapter 151B provides an exclusive remedy under Massachusetts law for protected class wage discrimination.  See Petsch-Schmid v. Boston Edison Co., 914 F.Supp. 697, 707 (D. Mass. 1996).  Therefore, Count I of plaintiff's claim, which incorporates all of Chapter 151B, could include a claim for gender based wage discrimination.

A plaintiff seeking to recover for gender based wage discrimination must show that she "was paid less than her male counterparts who were performing work requiring substantially equal skill, effort, and responsibility under similar working

conditions." <u>McMillan</u> v. <u>Mass. Soc. for Prevention of Cruelty To Animals</u>, 140 F.3d 288, 298 (1st Cir. 1998).  Plaintiff alleges in her Complaint that she was one of the lowest paid employees both as an Employee Concerns Coordinator and as an ECI Manager.

Plaintiff has not, however, pled any facts that would allow this Court to determine whether her male peers shared the same job responsibilities, worked the same hours, or even had the same job duties.  Plaintiff's allegation that a direct male report received nearly the same salary she does, is not evidence that she was underpaid by comparison with similarly situated peers. Furthermore, plaintiff's bare factual pleadings allege only that she was paid less than others, not that such alleged under payment was due to her gender or, as discussed below, her disability. Therefore, insofar as plaintiff is alleging a claim for gender based wage discrimination, Count I will be dismissed.

### C.    Count II: Discrimination on The Basis of Disability, in Violation of M.G.L. C. 151B

As with gender discrimination, plaintiff has not pled separate counts for her various theories of disability discrimination.  Rather, Count II of the Complaint simply indicates that "[d]efendant has engaged in discrimination against Ms. Cook on the basis of disability."  The Court presumes that plaintiff intended to plead (by implication) disability wage discrimination, hostile work environment and reasonable accommodation claims.

-10-

Defendant responds that plaintiff's disability discrimination claim must fail because 1) plaintiff is not a qualified handicapped person, 2) plaintiff's alleged conduct that occurred within the statutory period does not establish a hostile work environment and 3) plaintiff failed to exhaust her administrative remedies related to her reasonable accommodation claim.  The Court addresses all three potential causes of action because claims made under different theories of discrimination are to be analyzed separately.  See Lattimore, 99 F.3d at 463.

As a preliminary matter, defendant argues that all of plaintiff's disability-based claims are deficient because plaintiff has not pled sufficient facts to show that she is a qualified handicapped person.  To be considered a qualified handicapped person, plaintiff must be

> a handicapped person who is capable of performing the
> essential functions of a particular job, or who would
> be capable of performing the essential functions of a
> particular job with reasonable accommodation to [her]
> handicap.

Mass. Gen. Laws ch. 151B, § 1.  Defendant asserts that 1) plaintiff acknowledges that she may not be able to return to work and 2) that the Complaint is silent with respect to Cook's ability to perform the essential functions of her employment.

As to defendant's first ground, plaintiff correctly points out that the question is not whether she currently qualifies as handicapped person but whether she was a qualified handicapped

person at the time of the events alleged in the Complaint.  As to
defendant's second ground, plaintiff has pled that "she has
always performed her job in a satisfactory or better manner."
Furthermore, she was promoted twice, including once in 2011,
within the relevant 300-day period.  If plaintiff was incapable
of performing the essential functions of her job, presumably she
would not have been retained and promoted.  Therefore, the Court
declines to dismiss Count II on the grounds that Cook was not a
qualified handicapped person.

### 1. Hostile Work Environment

As discussed with respect to Count I, to state a claim for
hostile work environment, a plaintiff must show that the "conduct
alleged was sufficiently severe and pervasive to interfere with a
reasonable person's work performance." Muzzy, 424 Mass. at 411.
To allege disability discrimination, plaintiff must allege that
she was exposed to a hostile work environment with at least one
anchoring event occurring between November 26, 2010 and September
22, 2011.  As discussed previously, plaintiff alleges that three
incidents occurred during the subject period: 1) the Conditions
Report referencing plaintiff's anatomy, 2) the Conditions Report
falsely accusing her husband of entering the building illegally,
and 3) an otherwise unidentified, sexually harassing comment.
None of those incidents implicate plaintiff's disability and thus
cannot support a disability discrimination claim.

Also as discussed above, the inadequate response by defendant to plaintiff's internal complaints of harassment may be considered as evidence of a hostile work environment.  See Cuddyer, 434 Mass. at 541; College-Town, 400 Mass. at 167; Thomas O'Connor Constructors, 72 Mass. App. Ct. at 561.  Therefore, the allegedly inadequate response in March, 2011 may be a sufficient anchoring event, permitting this Court to consider any relevant conduct prior to November, 2010.

Plaintiff alleges the following events that occurred prior to the 300-day period that relate to her disability: 1) an employee Condition Report stated that Cook was carrying drug paraphernalia, which was actually her catheter, 2) a newspaper article about plaintiff's experience with MS was posted all over the Plant, presumably in an attempt to humiliate her and 3) multiple Condition Reports were filed complaining that Cook's handicap parking permit was illegitimate.  Although the degree of harassment seems less frequent and severe than plaintiff's gender related complaints, the facts alleged may be construed as severe and pervasive enough to interfere with a reasonable person's work performance.  Accordingly, plaintiff has pled sufficient facts to state a claim for disability discrimination based on a hostile work environment.

**2. Wage Discrimination**

-13-

Consideration of Plaintiff's claim for relief based upon disability-based wage discrimination relies on the same analysis as the gender-based wage discrimination claim.  Plaintiff has failed to allege any facts that show she was paid less than her able-bodied peers "who were performing work requiring substantially equal skill, effort, and responsibility under similar working conditions." McMillan, 140 F.3d at 298. Plaintiff's complaint does not allege that she was disproportionately paid in relation to any able-bodied, similarly situated peers.  The bare assertion that her pay was low without any connection to her stated disability is insufficient to establish a claim for wage discrimination.  Therefore, insofar as plaintiff seeks to state a claim for disability based wage discrimination, Count II will be dismissed.

### 3. Reasonable Accommodation

Defendant also seeks dismissal of any reasonable accommodation claim on the ground that plaintiff did not properly exhaust the required administrative remedies before the MCAD. The dual purpose of remedy exhaustion is: "1) to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination and 2) to provide notice to the defendant of potential liability." Cuddyer, 434 Mass. at 531.  The administrative complaint does not establish a "rigid blueprint for the civil action," but the complaint in court may include

facts and allegations that the MCAD investigation could
reasonably be expected to uncover. Everett v. 357 Corp., 453
Mass. 585, 603 (2009).  The reasonable investigation rule does
not, however, allow a plaintiff to "extend his claim endlessly
beyond the bounds and parameters encompassed by the
administrative charge." Thornton v. United Parcel Serv., Inc.,
587 F.3d 27, 32 (1st Cir. 2009). Ultimately, "to be within the
investigatory scope, the agency must be informed of the claim in
the complaint or during the period of investigation." Ianetta v.
Putnam Investments, Inc., 142 F. Supp. 2d 131, 134 (D. Mass.
2001.

Failure by ENOI reasonably to accommodate Cook's disability
was never alleged at the MCAD.  As a result, plaintiff did not
give the MCAD an opportunity to perform its necessary function.
Plaintiff returned to work on July 2, 2012. Several days later
Cook informed the MCAD that she wished to exercise her private
right of action and the requested dismissal was entered on July
23, 2012.  Defendant's previous accommodation was allegedly
rescinded shortly after plaintiff's return to work.  As a result,
the MCAD had no opportunity to investigate, receive notice or
conciliate an alleged failure to accommodate plaintiff's
disability.  Because a claim of reasonable accommodation was
never before the MCAD, plaintiff has failed to exhaust her
administrative remedies and this Court lacks jurisdiction over a

reasonable accommodation claim.  Therefore, insofar as plaintiff seeks to state a claim for reasonable accommodation, Count II will be dismissed.

**ORDER**

In accordance with the foregoing, defendant's Motion to Dismiss (Docket No. 8) is

1) with respect to Count I, as to the claim for wage discrimination, **ALLOWED**, and as to a claim for hostile work environment, **DENIED** and

2) with respect to Count II, as to claims for wage discrimination and reasonable accommodation, **ALLOWED**, and as to a claim for hostile work environment, **DENIED**.

While the Court does not dismiss the Complaint in its entirety, it notes that the Complaint as it stands is deficient. Plaintiff is therefore directed to file an Amended Complaint in accordance with the Court's rulings that a) alleges claims based on differing theories as separate counts and b) adequately connects the facts pled with the appropriate theory.


**So ordered.**

                                   /s/ Nathaniel M. Gorton
                                   Nathaniel M. Gorton
                                   United States District Judge
Dated May 21, 2013